RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0336p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

          *Plaintiff-Appellee*,

    *v.*

TROY H. WILLIAMS,

          *Defendant-Appellant*.

No. 25-3241

───────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:13-cr-00247-1—Dan A. Polster, District Judge.

Decided and Filed: December 12, 2025

Before: SUTTON, Chief Judge; BOGGS and BLOOMEKATZ, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ON BRIEF:** Catherine Adinaro Shusky, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Daniel R. Ranke, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

───────────────

## OPINION

───────────────

BLOOMEKATZ, Circuit Judge. Troy Williams pleaded guilty to drug offenses, possessing a firearm as a felon, and money laundering. The district court sentenced him to 198 months in prison. About a decade later, Williams moved the district court for compassionate release, claiming that the prison officials were inadequately treating his serious medical condition. The district court denied his motion. It found that any deficiency in Williams's

medical care did not amount to extraordinary and compelling circumstances warranting his release. Because the district court's factual findings were not clearly erroneous, we affirm.

**BACKGROUND**

In 2015, Troy Williams pleaded guilty to one count of conspiring to distribute cocaine, one count of possessing heroin with intent to distribute, one count of possessing a firearm as a felon, and three counts of money laundering. *See* 21 U.S.C. § 841(a)(1), (b)(1)(A), and § 846 (cocaine conspiracy); 21 U.S.C. § 841(a)(1), (b)(1)(B) (heroin distribution); 18 U.S.C. § 922(g) (felon in possession); 21 U.S.C. § 1957 (money laundering). Consistent with Williams's plea agreement, the district court sentenced Williams to 198 months in prison followed by a ten-year term of supervised release, which was significantly lower than the guidelines range of 262 to 327 months.

Williams continues to suffer from two severe medical conditions that existed at his original sentencing—thrombophilia and recurrent deep vein thrombosis. Thrombophilia increases the risk of blood clot formation, and deep vein thrombosis occurs when a blood clot forms in a deep vein. Failure to treat these conditions properly can lead to life-threatening complications, such as a pulmonary embolism. To manage his thrombophilia, Williams takes warfarin, a prescription pharmaceutical that helps prevent blood clots. A patient taking warfarin requires ongoing blood testing so that medical professionals can monitor blood clotting speed and adjust the medication dosage as necessary. Consequently, upon prison entry, the Bureau of Prisons (BOP) designated Williams as a "Care Level 3" inmate—meaning that he has a "complex" medical condition that requires "frequent clinical contacts" to manage his health and "prevent hospitalizations or complications." Care Level Classifications, Federal BOP, at 3 (2019).

In 2024, nearly a decade after his sentencing, Williams filed a pro se motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). The district court appointed counsel to supplement Williams's motion. In his counseled supplement, Williams argued that the BOP was inadequately treating his thrombophilia, providing the requisite "extraordinary and compelling" circumstances for his early release under the compassionate-release statute. He explained that

the allegedly deficient medical care began after the BOP transferred him from Federal Correctional Institution (FCI) Allenwood to FCI Coleman.  Specifically, Williams contended that FCI Coleman was not testing his blood frequently enough to properly monitor his warfarin dosage, putting him at risk of blood clots and ensuing complications.  He further maintained that the 18 U.S.C. § 3553(a) sentencing factors supported his early release, given his rehabilitation, the superior medical care outside of prison, his support system when released, his time served, and the lengthy term of supervised release that awaits him upon his return to society.

The district court denied Williams's request for compassionate release.  It found that FCI Coleman's treatment of Williams's thrombophilia was not "so deficient as to warrant intervention" and thus concluded that Williams had not shown any extraordinary and compelling circumstances.  D. Ct. Op., R. 392, PageID 3052.  The district court also determined that even if Williams could show extraordinary and compelling circumstances, the sentencing factors did not support his release.

Williams timely appealed.

## ANALYSIS

A district court may grant compassionate release under 18 U.S.C. § 3582(c)(1)(A) if the defendant satisfies three criteria: (1) "extraordinary and compelling reasons warrant" a sentence reduction; (2) the "reduction is consistent with applicable policy statements" from the Sentencing Commission; and (3) the § 3553(a) sentencing factors support the reduction.  18 U.S.C. § 3582(c)(1)(A); *see also McCall v. United States*, 56 F.4th 1048, 1053 (6th Cir. 2022) (en banc).  We review a district court's denial of compassionate release for an abuse of discretion. *United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020).  We examine the district court's legal conclusions de novo, its factual findings for clear error, and its § 3553(a) analysis for an abuse of discretion. *See United States v. Jones*, 980 F.3d 1098, 1112, 1116 (6th Cir. 2020).

Williams challenges both the district court's determination that no extraordinary and compelling circumstances supported his release and its § 3553(a) analysis.  We do not, however, need to examine each argument.  The district court did not clearly err in concluding that Williams's medical circumstances failed to rise to the level of extraordinary and compelling

circumstances, and that alone is sufficient to affirm. *See United States v. Tomes*, 990 F.3d 500, 502 (6th Cir. 2021).

### A.    Legal Standard

Williams contends that the district court should have found that his medical condition— and particularly his lack of adequate medical care—constitutes "extraordinary and compelling circumstances" under the compassionate-release statute. The text of 18 U.S.C. § 3582 provides little guidance on how to interpret the words "extraordinary and compelling," but Congress expressly tasked the Sentencing Commission with interpreting that phrase. 28 U.S.C. § 994(t); *see also McCall*, 56 F.4th at 1053. Accordingly, we look to applicable policy statements from the Sentencing Commission to determine what constitutes an extraordinary and compelling reason to grant compassionate release. *United States v. Washington*, 122 F.4th 264, 266–67 (6th Cir. 2024).

The policy statement that Williams relies upon provides that "[e]xtraordinary and compelling reasons exist" when the "defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). As such, Williams must show that he is (1) suffering from a medical condition necessitating long-term or specialized care; (2) not getting that care; and, therefore, (3) "at risk" of death or serious health deterioration. Additionally, unchanged factual circumstances cannot constitute extraordinary and compelling circumstances under our caselaw. *United States v. Hunter*, 12 F.4th 555, 569 (6th Cir. 2021). Williams's thrombophilia diagnosis was known at sentencing, so he prudently does not rely on it alone. Instead, he argues that, although his health has not deteriorated, he is "at risk" of deterioration or death from the alleged lack of adequate treatment at FCI Coleman.

### B.    Factual Findings

The success of Williams's claim depends on whether, as a matter of fact, he is at risk of death or a serious deterioration in health due to FCI Coleman not providing the medical care his thrombophilia requires. Although the district court was "sympathetic" to any "isolated" delays

in treatment, it determined that the "BOP's care" was not "so deficient as to warrant intervention." D. Ct. Op., R. 392, PageID 3052. It found that Williams had not satisfied the second and third steps of the § 1B1.13(b)(1)(C) analysis because he had not shown that he was receiving insufficient treatment and thus at risk of a serious deterioration in health. The district court therefore concluded that no extraordinary and compelling circumstances supported Williams's release.

The record supports the district court's factfinding. In reaching its decision, the district court examined Williams's medical records and relied on a declaration from the Clinical Director of FCI Coleman, Kendes Archer, who provided the only expert testimony in the record. Williams's medical records confirm that FCI Coleman has provided ongoing treatment for his thrombophilia. Director Archer acknowledged that Williams's thrombophilia "increase[s] the risk" for blood clotting and serious "cardiovascular complications," but affirmed that his condition is "stable and can be fully managed" at FCI Coleman. Appellee Br. at 18–19.

Williams contests the district court's finding that FCI Coleman was providing sufficient care for his thrombophilia for purposes of § 1B1.13(b)(1)(C). Reviewing for clear error, his arguments do not persuade us to disturb the district court's factfinding.

*First*, Williams contends that FCI Coleman was not testing his blood frequently enough. He relies on a medical website recommending that people taking warfarin be blood tested at least once a month "to make sure the level of warfarin remains effective." Appellant Br. at 16. Then he points to his medical records, which reflect several occasions where Williams has gone around two months without FCI Coleman testing his blood. The website, however, does not indicate whether once-a-month testing is the minimally necessary standard of care as opposed to a best practice. Nor does it show that "isolated" instances of going over a month without blood testing, D. Ct. Op., R. 392, PageID 3052, create the "risk of serious deterioration in health or death" that § 1B1.13(b)(1)(C) demands. No expert medical testimony in the record supplies that missing link in his argument. Furthermore, Williams's medical records somewhat undercut his claim, as they reflect that even during a period with less than monthly testing, his blood clotting time remained within an acceptable range and his doctors did not adjust his warfarin dosage.

Given the overall record, the district court did not clearly err in finding that the frequency of Williams's blood testing did not present a "risk of serious deterioration" to his health.

*Second*, Williams maintains that lockdowns at FCI Coleman were preventing the facility from adequately treating his thrombophilia. He points to a note in his medical records observing that a doctor was unable to complete a scheduled blood test due to "continuous lock downs." Appellant Br. at 15. And he relies on a third-party investigation of FCI Coleman reporting frequent lockdowns that interfere with medical care. As the government points out, however, there is only one documented instance in Williams's voluminous medical records of a lockdown interfering with his blood testing. And while the third-party report about the problems with medical care at FCI Coleman is worrying, that investigation took place over two years ago and is in tension with Director Archer's affirmation that FCI Coleman can fully manage Williams's thrombophilia. The district court did not clearly err by affording more weight to Director Archer's declaration and its own review of Williams's medical records than to the third-party report.

*Third*, Williams claims that ever since he was transferred to FCI Coleman, he was "not being given his warfarin medication regularly." Appellant Br. at 16. That too is a concerning allegation, but not one that the district court credited. Neither Williams's medical records nor the broader record back up his claim. Considering the threadbare evidence on this point, the district court did not clearly err by declining to credit it.

Accordingly, Williams has not shown clear error in the district court's factfinding. So, the district court did not abuse its discretion in denying Williams's motion for compassionate release on the grounds that he had not satisfied § 1B1.13(b)(1)(C) and thus not shown extraordinary and compelling circumstances.

## CONCLUSION

We affirm the district court's denial of compassionate release.